IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 2-279 T

(Chief Judge Edward J. Damich)

PENNZOIL-QUAKER STATE COMPANY AND SUBSIDIARIES, SUCCESSOR TO QUAKER STATE CORPORATION AND SUBSIDIARIES,

Plaintiff

v.

UNITED STATES,

Defendant

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS

PETER A. LOWY
910 Louisiana St.
Suite 4396
Houston, Texas 77002
(713) 241-4755 (telephone)
(713) 241-2162 (facsimile)

Attorney for Plaintiff

## TABLE OF CONTENTS

INTRODUCTION....................................................................................................1

ARGUMENT..........................................................................................................1

I. Background: Defendant's motion is a transparent ploy to obtain a *de facto* enlargement of time to file a response to Quaker State's motion................1

A. Four days before Defendant's response was due, Defendant staged brief settlement discussions that failed miserably........................................1

B. Defendant's motion to stay, filed after settlement discussions fell on their face, could be for no purpose other than delay....................................4

II. The Court should deny Defendant's motion: Granting Defendant's baseless motion would move the process backwards, not forwards, and would reward Defendant's delay tactics...........................................................7

III. The Court should grant summary judgment: Defendant has failed to demonstrate that the Court should stay Quaker State's motion under Rule 56(f) or that there exists a genuine issue of material fact, and the Court should not give Defendant another chance.............................................................9

CONCLUSION.......................................................................................................11

APPENDIX: DECLARATION OF PETER A. LOWY.......................................A1

## INTRODUCTION

Defendant's motion to stay its response to Quaker State's summary judgment motion for an additional 120 days is a desperate delay tactic and should be denied.

In its September 14, 2005 Order, the Court stated it would entertain a motion to stay only if there is legitimate "progress towards a settlement." Here, there is no such progress and Defendant knows it. Defendant instead has filed this baseless motion solely to buy more time for its summary judgment response and end-run the Court's admonition that it would not grant further enlargements of time. Defendant gambles that the Court will grant it a *de facto* extension by allowing it to file a summary judgment response after its motion to stay is denied.

The Court should call Defendant's bluff. It should deny Defendant's motion to stay and, rather than allow Defendant to circumvent its orders by obtaining a *de facto* extension, simply grant summary judgment for Quaker State.

## ARGUMENT

### I. Background: Defendant's motion is a transparent ploy to obtain a de facto enlargement of time to file a response to Quaker State's motion.

#### A. Four days before Defendant's response was due, Defendant staged brief settlement discussions that failed miserably.

On August 30, 2005, Quaker State filed its motion for summary judgment. Under the Court's rules, Defendant's response ordinarily would be due 28 days from that time, which would have been September 28, 2005. However, based on the representations and pleas of Defendant that it needed time to review the

administrative file (even though Defendant should have reviewed the file long ago during the two years it claimed to be processing and verifying the $2 million refund that is at issue here), the Court allowed Defendant until November 14, 2005, to file its response. Defendant thus had 75 days to respond to Quaker State's motion.

Despite this generous allotment of time, Defendant made no serious effort to settle the case or prepare a summary judgment response. Instead, *four business days before its response was due*, Defendant initiated a 15-minute teleconference with Quaker State to "discuss the remaining issues." During the teleconference, counsel for Defendant indicated that if Quaker State agreed to a stay, she would recommend to her superiors that Quaker State receive the full refund it seeks in its amended complaint. As in the past, however, Defendant did not agree to put this representation in writing, nor would she provide any assurance that the IRS or her superiors in her trial section would not scuttle her recommendation after Quaker State agreed to the stay.

Notably, these promises are similar to those that Defendant had made 18 months before, and then reneged upon. On April 26, 2004, counsel for Defendant informed Quaker State that it agreed with Quaker State's refund claim and would submit a refund request to the Joint Committee on Taxation for review. *See Declaration, attached.* Defendant later represented that the matter was in fact submitted to the Joint Committee on Taxation. As the Court knows, that never happened, and Quaker State never received its refund. Given Defendant's history

of broken promises and delay, Quaker State understandably needs more than an empty oral representation and will not agree to sidetrack this lawsuit without a firm, written commitment that Defendant intends to refund the money it owes and has made genuine progress towards approving the refund.

Quaker State thus insisted that Defendant's counsel provide a written representation that she would recommend a full refund, and that the recommendation had support from her trial section. Quaker State also advised that Defendant would need to include these representations in a written filing with the Court. Counsel for Defendant balked at these requests during the telephone call, but after Quaker State emphasized their necessity she eventually agreed to discuss them with her reviewer. At no point during the telephone call did Quaker State agree to stay the litigation. Instead, the parties understood that open issues remained, and that Defendant's counsel would discuss Quaker State's requests with her reviewer and promptly advise Quaker State as to its position on the open issues.

The next morning, after receiving no response from Defendant, Quaker State emailed Defendant to confirm and clarify some of the written representations it would require before agreeing to a stay. Quaker State specified that it needs a representation in writing that Defendant's trial section would actually recommend to the Office of Review that the refunds would be paid in full, and that Defendant must make a similar representation to the Court. Defendant's counsel responded that the conditions were unacceptable and refused to place any of her

representations in writing or make a commitment on behalf of anyone other than herself, even though she admittedly lacks the authority to bind Defendant to anything.

Settlement discussions were over. The ball had not been advanced beyond the empty promises Defendant had made 18 months ago. In an email dated November 10, 2005, Defendant acknowledged that settlement efforts had "failed."[1]

**B. Defendant's motion to stay, filed after settlement discussions fell on their face, could be for no purpose other than delay.**

After settlement discussion failed, and within 24 hours of Defendant's first suggestion that she may file a motion to stay, Quaker State made it crystal clear that such a motion would be improper, given the lack of settlement progress. Quaker State emphasized its concern that Defendant was trying to end-run the Court's admonition in the last status conference that it would not grant further enlargements of time. In particular, Quaker State advised Defendant it would oppose any effort by Defendant to seek a *de facto* enlargement of time by filing a motion to stay in hopes of obtaining another opportunity to file its summary judgment response after the motion to stay was denied (or after a feigned settlement effort if granted). Quaker State explicitly advised that it would oppose

[1] See attached Declaration at Exhibit 1 for greater detail of the brief settlement discussions that transpired before Defendant filed its motion.

both the motion itself and any additional extension of time for Defendant's summary judgment response beyond November 15, 2005.[2]

Despite Defendant's acknowledgement that settlement discussions had "failed" and its knowledge that the other party to the purported settlement discussions would oppose the stay since settlement had not advanced, Defendant persisted on its predetermined course to file a motion to stay based on the admittedly false premise that the parties are making progress towards settlement. It is now apparent that the November 8 telephone conference was simply a pretext for Defendant to seek yet another extension of its long-overdue summary judgment response. The absence of any legitimate basis for Defendant's motion, coupled with Defendant's history of delay and refusal to make any commitment in writing, suggests that Defendant's motion is simply another dilatory tactic.[3]

If this motion is a good faith effort to settle and is not a delay tactic, several questions beg to be answered. Why did Defendant's counsel decline to place her representations in writing to Quaker State? Why couldn't Defendant's counsel make any representations about the views of her trial section, when the decisionmakers in her trial section have been intimately involved in this matter for years and presumably consulted with her before she made the oral representations

[2] Quaker State did agree to extend the summary judgment deadline from November 14 to November 15 to compensate for the brief amount of time the parties spent on settlement issues during November 8 and 9.

[3] Defendant also has a history in this case of using settlement as an apparent guise to delay its summary judgment responses. While the §1341 summary judgment was pending, Defendant solicited Quaker State's agreement to extend its response deadline to consider a settlement offer that Quaker State had made. Defendant expressed optimism to secure Quaker State's consent, but, after receiving multiple, unopposed stays from Quaker State, rejected the offer without even a counter-offer. Defendant then filed its summary judgment opposition and cross-motion, having bought itself an additional couple of months to file its response by making false assurances to Quaker State.

during the telephone conference? Why won't Defendant put its representations in writing to the Court (in its motion, Defendant states only that she will prepare a recommendation regarding a *possible* administrative resolution)? In fact, why didn't Defendant state as grounds for her motion that she planned to recommend paying the refund?[4]

Also, if this motion is intended to cover the time needed to process a settlement, why did Defendant seek a period of stay that would likely expire before the refund could be approved? Defendant requests 120 days, when her own Declaration reveals the Office of Review estimates it would take *at least* (not *at most*) 120 days to review the recommendation. That the requested 120-day stay will likely expire before any refund would be approved belies the good faith of the motion.[5] Also, why didn't Defendant initiate the process earlier instead of waiting until the week before its summary judgment response was due, particularly in light of Defendant indication that she needs 30 days just to make her recommendation?

---

[4] Notably, if Defendant really intends to concede the issues in the amended complaint (rather than obtain a *de facto* enlargement of time), it could have represented in its motion that it is recommending concession, and then explain the steps that have been taken so far to obtain approval and an estimate of the time to obtain final approval. Concession is a unilateral process and Defendant does not need a "settlement offer" from Quaker State to get the process started. Instead of providing concrete details of the progress it has made toward approving the refund, Defendant's motion relies solely on boilerplate assertions about the "efficiency" of its administrative procedures, and on Defendant's apparent belief that Quaker State agreed to a stay, which was dispelled less than 24 hours after the parties' telephone call.

[5] Note that Defendant previously stated that in her experience it takes the Office of Review six months or more to complete its review. *See Transcript (6-27-05), p. 17.* Also, although Defendant's motion is ambiguous on this point, it is not entirely clear whether the Office of Review's estimate includes the time needed for the Joint Committee on Taxation to review the matter. It is also unclear whether it includes the time for the recommendation to move through the trial section to the Office of Review (Defendant's counsel claims she needs 30 days to make her recommendation and then her section chief will need additional time to review the recommendation).

**II. The Court should deny Defendant's motion: Defendant's motion is baseless, and granting it would move the process backwards, not forwards.**

The Court should deny Defendant's motion to stay. Defendant has not demonstrated that the parties are "making progress toward a settlement" as required by the Court. *See Order filed September 14, 2005*. As set forth above, the only "settlement" activity consisted of a single 15-minute phone call that Defendant initiated four business days before its response was due, followed by a series of e-mails making clear that no progress was made. Defendant's counsel acknowledged two days after the phone call that the settlement negotiations had "failed." No settlement offers have been made, and neither party states an intention to make an offer. Indeed, the brief settlement talks, instead of bringing the parties closer together, actually drove the parties further apart.

The parties are further from settlement than they were 18 months ago when Defendant assured Quaker State it would recommend full payment of Quaker State's refund and stated that the matter would be promptly submitted to the Joint Committee on Taxation. The parties also are having more difficulty communicating with each other, making the conditions for settlement even worse. Quaker State believes Defendant is not acting in good faith and Defendant has unjustifiably accused Quaker State of "nullifying prior settlement negotiations." Unfortunately, trust and good will between the parties is at an all-time low. No settlement progress has been made, and none is foreseeable under these conditions.

In fact, Defendant's motion conspicuously avoids any statement that there is actual progress toward settling the case, even though the Court stated this was the only permissible ground for a stay. Instead, Defendant's motion touts the purported efficiency of its internal administrative procedures, claiming that the Court must defer to these procedures to promote the "just, speedy, and inexpensive determination of this case." History, however, demonstrates that Defendant's "settlement procedures" are anything but speedy and efficient, which is the reason Quaker State was forced to seek summary judgment in the first place. (Quaker State's previous offer had been mired in Defendant's "settlement procedures" for over two years and Defendant never even took action on it).

At this point, justice would be more efficiently and effectively served by adjudicating Quaker State's motion for summary judgment, rather than forcing Quaker State to start from scratch and endure the vagaries of Defendant's endless "settlement procedure" all over again. The case is ready and ripe for disposition on summary judgment. The motion has been briefed, the issues have gone uncontroverted (as discussed further below), and the Court could swiftly enter judgment. If, on the other hand, the case is stayed and Defendant's counsel actually follows through with the purported "recommendation" that she has yet to put in writing (a big assumption), Defendant *estimates* it will take at least 120 days to process the recommendation. This estimate, it appears, includes at least 30 days for Defendant's counsel just to prepare the recommendation itself. The last time Defendant told Quaker State and the Court that it would take 30 days to make her

recommendation, 30 days turned into over 300 days. *See Declaration, attached.* Moreover, it is unclear from Defendant's motion whether the estimate includes the time for review by the Joint Committee on Taxation, and there is no assurance the process will not break down again, making the whole exercise a colossal waste of time.

In short, Defendant's motion is without merit and cannot be saved on grounds of administrative efficiency.

**III. The Court should grant summary judgment: Defendant has failed to demonstrate that the Court should stay Quaker State's motion under Rule 56(f) or that there exists a genuine issue of material fact, and the Court should not give Defendant another chance.**

In filing a purely dilatory motion knowing that no settlement progress has been made, rather than filing a motion under Rule 56(f) or an outright opposition to Quaker State's motion, Defendant has flouted the Court's September 14, 2005 Order and failed to rebut Quaker State's motion. Defendant makes no attempt to satisfy the five-factor test set forth in *Theisen Vending Co. v. U.S.*, 58 Fed. Cl. 194 (2003) for delaying its summary judgment response under Rule 56(f). Nor has Defendant come forward with significant probative evidence that genuine issues of material fact exist. Moreover, given Defendant's repeated admissions that it owes Quaker State the refunds at issue, any summary judgment response would be an exercise in futility. The Court, therefore, should end this matter without further delay.

Predictably, Defendant will complain that it should be given yet another opportunity to respond to Quaker State's summary judgment motion after the Court denies its stay (that's how the delay tactic works—file for a stay, which will buy time to file a response once the stay is denied). The Court should not countenance this back-door effort to circumvent its orders. The Court has already given Defendant 75 days to prepare its response, on top of the *five years* Defendant already had to consider these issues. Having squandered the generous amount of time afforded for its summary judgment response, and having instead filed this purely dilatory motion, Defendant forfeited any further opportunities to respond.

Defendant also cannot explain how the parties' brief "settlement discussions" prevented it from preparing a summary judgment response within the generous time afforded by the Court. The settlement discussions transpired over a 24-hour period and consisted of a 15-minute phone call, a voice mail, and a handful of short e-mails. Even assuming Defendant's attention was fully diverted for one day, Defendant still had 74 days to file its response.

Nor can Defendant argue that it relied upon the prospect of a stay in delaying its response. Immediately after settlement negotiations failed, Quaker State advised Defendant that it would oppose any attempt to use a "motion to stay" as a pretext for obtaining a back-door extension of its summary judgment response deadline. Quaker State warned Defendant that the Court's order did not permit such a tactic, and that if Defendant disagreed, she should immediately advise

Quaker State so that the parties could jointly contact the Court and seek clarification.

Defendant did not respond to Quaker State or contact the Court to seek clarification. Instead, Defendant simply filed this baseless motion to stay and, in so doing, is trying to execute the transparent ploy Quaker State had explicitly stated it would oppose. The Court should not condone this delay tactic and should instead enter judgment, ending this matter once and for all.

**CONCLUSION**

The Court has given Defendant ample opportunity to respond to Quaker State's motion for summary judgment. Quaker State should not be punished for Defendant's failure to do so. The Court should reject Defendant's latest dilatory ploy and enter summary judgment in favor of Quaker State.

Respectfully submitted,

s/Peter A. Lowy

Date: November 25, 2005

PETER A. LOWY
910 Louisiana St.
Ste 4396
Houston, Texas 77002
(713) 241-4755 (telephone)
(713) 241-2162 (facsimile)

Attorney for Plaintiff