EXHIBIT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 2-279 T
(Chief Judge Damich)

PENNZOIL-QUAKER STATE COMPANY
AND SUBSIDIARIES, SUCCESSOR TO QUAKER
STATE CORPORATION AND SUBSIDIARIES,

Plaintiff

V.

UNITED STATES OF AMERICA,

Defendant.

DECLARATION OF PETER A. LOWY

I, Peter A. Lowy, am attorney of record for Plaintiff in the above captioned case, Pennzoil-Quaker State Company v. United States, and I state as follows:

1. As described in greater detail below, the parties in the above captioned lawsuit have not made any progress towards settlement. They briefly discussed the possibility of a motion to stay the summary judgment proceedings for settlement talks. Before Quaker State would agree to a stay, however, it required certain assurances that there was genuine progress towards settlement. Defendant refused any of the assurances and within 24-hours of commencing the talks it was clear there had been no progress towards settlement and thus a motion to stay would be improper and a waste of time.

2. On November 8, 2005, I received an email from Jennifer Dover Spriggs (hereinafter, "Defendant's counsel") requesting a teleconference for later that afternoon to discuss "the remaining issues in this case." I agreed to meet. Defendant's counsel called me at 4:30pm EST. My best estimate is that the telephone call lasted roughly 15 minutes.

3. Early in the teleconference, but after some jockeying, Defendant's counsel said that she has reviewed Quaker State's brief and the administrative file and that she is prepared to recommend that Quaker State receive the refund it seeks in its amended complaint (hereinafter, "$2 million refund"), provided that Quaker State agree to stay the summary judgment proceedings so that she could make her recommendation and attempt to resolve the matter through the administrative process.

4. Given that it was 4 days before her response was due, and in light of our prior dealings, I was circumspect that this was a delay tactic. I was also unsure whether this was really any progress at all, since she had stated orally before that she agreed with the refund and

that the matter would be (and in fact was) submitted to the Joint Committee on Taxation. *Attached as Attachment 2 is a previously executed declaration that explains these events in greater detail.*

5. Over the remainder of the conversation the parties discussed several things that would have to fall into place before Quaker State would agree to a stay:

    a. I needed an unambiguous and unqualified representation from Defendant's counsel that she would recommend the settlement. I further emphasized that I would need this representation in writing. Defendant's counsel at first balked at this, but then agreed to discuss it with her reviewer and get back to me.

    b. I needed to get a sufficient "comfort level" that the recommendation would not get rejected from her section chief or thwarted by the IRS. I believe this request was reasonable, since her section chief had been involved in the case and surely she consulted him before she made the proposal; she also had the views of IRS chief counsel, which presumably recommended concession. I further emphasized that I would need this representation in writing. Defendant's counsel at first balked at this, but then seemed to agree to discuss it with her reviewer.

    c. The parties needed to agree on what they would file with the court. I made clear that I wanted Defendant to make the same representations to the court as Defendant was making to me. I also stated that I did not know what I would file, and that may depend on what Defendant agreed to file.

    d. Defendant's counsel indicated that Quaker State would need to submit another "settlement offer." In order to agree on the language of a settlement offer, the parties agreed Defendant's counsel would draft an "offer letter" that she believed was acceptable, which I would then review to consider whether it is acceptable for Quaker State to submit.

    e. The parties also discussed the length of the stay and the review process. Defendant's counsel said she needed 30 days to make her recommendation. I objected at first but after further discussion tentatively agreed to a 30-day period. Defendant's counsel did not know how long the remainder of the process would take but agreed to make an inquiry in this regard and get back to me.

6. While we had tentatively reached consensus some points, there was no agreement to stay the summary judgment proceedings and there was no agreement regarding further proceedings. Many critical points remained open. We agreed that we would further explore these points and get back in touch the next day. We ended the telephone call.

7. The next morning I did not hear from Defendant's counsel. At about 11:15am EST, I emailed Defendant's counsel stating specifically what I needed in writing and what I desired in order to gain a comfort level that we were making sincere progress and that this was not merely a delay tactic. This included a written representation that Defendant's counsel and her section would recommend to the Office of Review a full refund of the amount sought in the amended complaint, and a similar representation to the court. These conditions related to some of the open questions on which there had been no agreement (tentative or otherwise) and were not inconsistent with our previous discussions.

8. Early in the afternoon of the same day, Defendant's counsel left a voicemail message for me, stating that the conditions are "unacceptable." Defendant's counsel did not agree to any of the conditions; she did not agree to place anything in writing or provide any representation about the position of other people or agree to represent to the court whatever she ultimately would represent to me. There were no further settlement discussions, and settlement discussions clearly had failed.

9. Early that evening, I emailed Defendant's counsel to acknowledge receipt of her voicemail, and I mentioned that I looked forward to her response to Quaker State's motion. On November 10, 2005, Defendant's counsel emailed me to state that she never agreed to file a response to Quaker State's motion in the event that settlement discussions failed and that she would file whatever she deemed appropriate. She also acknowledged that settlement discussions had "failed."

10. On November 11, I emailed Defendant's counsel to reiterate that Quaker State will oppose any delay tactics, and I expressly included as an example, filing a motion to stay for settlement and then asking for a further opportunity to file an opposition when the stay is denied. I reiterated that the court's order lays out various responses Defendant may make in the alternative and that this is Defendant's opportunity to come forward with whatever responses it may have to Plaintiff's motion. I further stated that if Defendant's counsel believes that the order states otherwise she should let me know so that before she files her response we may contact the court for clarification.

11. Defendant's counsel did not seek clarification from the court and proceeded to file its motion to stay proceedings.

12. Attached as Attachment 1 is a string of emails that reflect communications described in this Declaration.

13. Through this declaration, I am also attaching supporting documentation relating to my previous Declaration, executed March 10, 2005. These documents, attached as Attachment 3, relate to Defendant's misrepresentations and exaggerations regarding the previous effort to "settle" the $2 million refund claim.

14. The attached documents are true and correct copies of what they appear to be.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Houston, Texas, this 25th day of November 2005

s/Peter A. Lowy
Peter A. Lowy



A3

**Lowy, Peter A SHLOIL-FXD**

**From:** Lowy, Peter A SHLOIL
**Sent:** Friday, November 11, 2005 8:26 AM
**To:** 'Jennifer.D.Spriggs@usdoj.gov'
**Subject:** RE: PQS Settlement

We obviously see things very differently. Re your statement that you will file whatever you determine is appropriate, I was not telling you what you should file. That of course is your prerogative. But since you mention it, I want to reiterate that Plaintiff will oppose any delay tactics--for example, if you file a motion to stay for settlement, and then ask for a further opportunity to file an opposition when the stay is denied. The Court's order lays out various responses Defendant may make in the alternative; this is Defendant's opportunity to launch whatever responses it may have to Plaintiff's motion; if you believe that is unclear, please let me know so that together we may contact the Court before you file your response.

-----Original Message-----
From: Jennifer.D.Spriggs@usdoj.gov [mailto:Jennifer.D.Spriggs@usdoj.gov]
Sent: Thursday, November 10, 2005 9:48 AM
To: Lowy, Peter A SHLOIL
Subject: RE: PQS Settlement

You apparently misunderstood my message. After our settlement conference on November 8, 2005, I, in reliance upon your representations, believed that the parties had reached an agreement regarding further proceedings in this matter. On November 9th I received your e-mail which, in essence, nullified the prior settlement negotiations and set forth plaintiff's settlement procedure. That procedure is unacceptable in that it requires a manager here represent to you and the Court that he or she will endorse my recommendation before the recommendation has even been written. Moreover, your suggested procedure is unacceptable in that it requires the Government to waive its attorney-client privilege.

I,in good faith participated in settlement negotiations with you on November 8, in an attempt to resolve this matter without further Court intervention. The fact that those negotiations failed does not mean nor did I ever represent that the Government plans to file its response brief on 11/14. Obviously, I am surprised by plaintiff's abrupt change in views after our November 8 settlement conference. Accordingly, I am reviewing the options available under the Court's order and on 11/14 will file what I determine is most appropriate given the situation.

-----Original Message-----
From: peter.a.lowy@shell.com [mailto:peter.a.lowy@shell.com]
Sent: Wednesday, November 09, 2005 6:10 PM
To: Spriggs, Jennifer D. (TAX)
Subject: RE: PQS Settlement

I just received your phone message that these conditions are not acceptable and that you will file your response. I regret that our brief settlement discussions failed to move the ball. I sincerely think Defendant should concede this case (and your oral statements indicate that you think so too). I hope the fact that you are filing a response does not eliminate the desirability of settling this case. If upon further review your section determines that this case should be submitted to the office of review, please let me know.

A4

-----Original Message-----
From: Lowy, Peter A SHLOIL
Sent: Wednesday, November 09, 2005 10:14 AM
To: 'Jennifer.D.Spriggs@usdoj.gov'
Subject: RE: PQS Settlement

This morning I had an opportunity to consult my client about our conversation yesterday afternoon. Before Plaintiff will agree to a stay, we will require, in writing, a representation that the trial section, with the support of your client, the IRS, shall, in good faith and within 30 days from filing the motion to stay, recommend to the office of review that Plaintiff receive the refund it seeks in its amended complaint (reserving the right to appeal the 1341 issue, of course). We will also require a similar representation to the Court. Please let me know if these conditions are acceptable. I hope you appreciate that we've been burned before, perhaps because we did not demand things in writing, and there is concern that this is a delay tactic/gamesmanship. If the above is not acceptable, we look forward to your response to our motion for summary judgment, and in that regard we will not object to a 1-day extension to file your response, to reflect the time that our discussions may have distracted your attention from drafting your response.



A5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 2-279 T

(Chief Judge Edward J. Damich)

PENNZOIL-QUAKER STATE COMPANY AND SUBSIDIARIES, SUCCESSOR TO QUAKER STATE CORPORATION AND SUBSIDIARIES,

Plaintiff

v.

THE UNITED STATES,

Defendant

DECLARATION OF PETER A. LOWY

1. I am counsel of record in the above captioned case, PENNZOIL-QUAKER STATE COMPANY v. UNITED STATES. I have personal knowledge of the matters contained in this affidavit, except to the extent stated. This affidavit attests to events and communications relevant to the 1996-1998 administrative matter that involves an approximate refund claim of $2 million.

2. On August 19, 2002, after an audit of Quaker State's 1996-1998 tax years, the IRS and Quaker State executed Form 5701 and Form 870, indicating that Quaker State was due a refund of $254,401 for taxable year 1996 and $1,907,545 for taxable year 1997 due to computational errors (hereinafter referred to as "$2 million refund").

3. Upon execution of the Forms 5701 and 870, Quaker State was led to believe that the IRS was preparing the taxpayer's case for review by the staff of the Joint Committee on Taxation, and soon thereafter it would receive its refund (declarant learned this from individuals who worked with the IRS on the audit).

4. Over a year later, on May 29, 2003, Quaker State was informed that the Department of Justice had the $2 million refund transferred to its office due to the above captioned case, and that the Department of Justice would not process the refund, even though Quaker State is entitled to the refund regardless of the outcome of the above captioned case. During a telephone conversation around this time, between Ms. Jennifer Spriggs and Quaker State's counsel, Quaker State's counsel had come to believe that the Department of Justice was not processing the $2 million refund claim.

5. On June 27, 2003, in a teleconference with the Court in the above captioned case, Ms. Spriggs explained/clarified that the taxpayer must make a "settlement offer" (even though there was no genuine dispute as to the amount by which the taxpayer overpaid its taxes) and that then the offer would be processed by the Department of Justice, which Ms. Spriggs explained more specifically entails that she would make a recommendation to the Office of Review within 30 days of receipt and then the Office of Review, if it agreed, would submit the matter to the Joint Committee on Taxation. *See Transcript (6/27/03) at pp.16-17.*

6. On July 7, 2003, Quaker State submitted a settlement offer, which Ms. Spriggs said was not in proper form (even though, according to Ms. Spriggs, there is no official form); on July 22, 2003, Quaker State resubmitted the settlement offer in compliance with Ms. Spriggs' specifications. The Department of Justice confirmed in writing that it would process the offer under its procedures. By August 22, 2003 (30 days after submittal of the offer that the Department agreed to process), Ms. Spriggs had not yet made her recommendation, even though she had led Quaker State to believe that Department procedures required her recommendation within 30 days.

7. On or about October 23, 2003, Quaker State asked Ms. Spriggs whether she had made a recommendation yet; Ms. Spriggs informed Quaker State that she had not and that she was waiting to hear from the computation specialist. On November 18, 2003, Quaker State again sought a status report; Ms. Spriggs indicated that she had not yet made a recommendation but that she was meeting with the IRS within a few days on the matter. On December 9, 2003, Quaker State again sought a status report; Ms. Spriggs indicated that she had not yet made a recommendation and that she was still waiting on the IRS. On January 15, 2004, Quaker State again sought a status report; Ms. Spriggs indicated that she had not yet made a recommendation and that she was still waiting on the IRS.

8. On January 28, 2004, Quaker State again sought a status report; Ms. Spriggs said she's still waiting for the computation specialist to get back to her but that at this point she was "not aware of anything materially inconsistent with" the IRS's recomputation on audit back in August, 2002. On February 25, 2004, Quaker

State again sought a status report; Ms. Spriggs said she received the computations from the specialist but has not yet reviewed them, but that she would at her earliest opportunity. On April 12, 2004, Quaker State again sought a status report; Ms. Spriggs said that she had reviewed the recomps for 1996 and 1997 and had a few questions for the recomp specialist, and planned to meet with him and then get back to Quaker State by the next week.

9. On April 26, 2004, Ms. Spriggs informed Quaker State that the Department of Justice agrees with the refund amount and indicated that it would send the matter back to the IRS so that the IRS could submit the refund to the Joint Committee on Taxation (rather than process the refund under Justice Department procedures, and have the Justice Department submit the refund to the Joint Committee on Taxation). Ms. Spriggs stated that sending it back to the IRS for the IRS to then submit to the Joint Committee on Taxation should be "faster."

10. On May 26, 2004, Quaker State again sought a status report; Ms. Spriggs confirmed that the file had been sent to the IRS for submission to the Joint Committee on Taxation. On September 3, 2004, Quaker State again sought a status report; Ms. Spriggs confirmed that the IRS had submitted the case to the Joint Committee on Taxation about a month ago (i.e., on or about August 3, 2004). However, as explained in paragraph 12, Ms. Spriggs may have given Quaker State erroneous information.

11. On January 10, 2005, Defendant had advised the Court, consistent with previously filed joint status reports, that with respect to the $2 million refund "the IRS has submitted its recommendations to the staff of the Joint Committee on Taxation." Note that although this was a joint status report, Defendant was responsible for providing the information contained in the report with respect to the status of the processing of the $2 million refund.

12. On March 10, 2005, despite numerous communications in which Ms. Spriggs discussed with Quaker State the status of the matter pending before the Joint Committee on Taxation, Ms. Spriggs told Quaker State that the matter had never been submitted to the Joint Committee on Taxation but was rather submitted by the IRS exam team to the IRS's internal review department that is called the Joint Committee on Taxation Office of Review.

Dated March 10, 2005

PETER A. LOWY

# UNITED STATES
# COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PENNZOIL-QUAKER STATE COMPANY AND SUBSIDIARIES, | ) | |
| Plaintiff, | ) | |
| v. | ) | Docket No.: 02-279T |
| UNITED STATES, | ) | |
| Defendant. | ) | |

Pages: 1 through 28

Place: Washington, D.C.

Date: June 27, 2003

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

that impression, because I wouldn't have the authority to say something like that. All I could tell Mr. Lowy is what our procedures are, and if a settlement offer is submitted, it would be processed, and I explained to him how it was processed.

I explained to him that I would prepare a recommendation. I explained to him that I would likely get the agent involved to help me with my recommendation, that the Internal Revenue Service Chief Counsel's Office here in Washington would make a recommendation. I would submit it to my reviewer, who would make a recommendation. Because this is a joint-committee case, I explained to Mr. Lowy, we have an office at the Department of Justice called the Office of Review, which we have to then submit our section's recommendation to the Office of Review at the Department of Justice, which would then review it and make its recommendations as to whether it would recommend it or not, and then the Office of Review would then send it to the joint committee.

And I explained to Mr. Lowy, that is the track -- if we had an offer, that that is the track that it would go, and Mr. Lowy asked me how long would that process take, and we got into a discussion about -- I can tell you how long it would take me to process it. I explained to Mr. Lowy that we are required to make a recommendation within 30 days. I

said, Once it goes from my office to the Office of Review, I can't tell you how long because I would have to talk to the Office of Review.

I told Mr. Lowy, I would be more than happy to try to find out from them, but, I said, in my experience, it often takes six months or more, depending on the complexity of the case, because it does have to go through a review process in the Office of Review, and I discussed that at length with Mr. Lowy.

THE COURT: Okay. Let me just say, though, on the record, you're willing to state -- I think you have stated -- that this '96-'97 audit and the $2 million refund that came out of it is on an entirely different track than this lawsuit. Is that correct, Ms. Spriggs?

MS. SPRIGGS: Before the motion to amend, yes, it was not a part of this lawsuit.

THE COURT: Yes.

MS. SPRIGGS: Well, it would be on a different track if there an offer were submitted. At this point, there was just an audit of some other years.

THE COURT: But there is no attempt to hold the Plaintiff hostage with regard to the '96-'97 issue by saying that nothing can be done on it until the Section 1341 lawsuit before me is resolved. Is that correct?

MS. SPRIGGS: Yes, Your Honor.



A11

**Lowy, Peter A SHLOIL-FXD**

**From:** Jennifer.D.Spriggs@usdoj.gov
**Sent:** Monday, June 30, 2003 1:01 PM
**To:** Lowy, Peter A SHLOIL
**Subject:** RE: Pennzoil-Quaker State

I am not aware of any guidelines for settlement offers but will let you know if I learn otherwise.

-----Original Message-----
From: peter.a.lowy@shell.com [mailto:peter.a.lowy@shell.com]
Sent: Monday, June 30, 2003 11:25 AM
To: Spriggs, Jennifer D.
Subject: RE: Pennzoil-Quaker State

Are there guidelines that explain the format...I would like for my first draft to at least be in the ballpark.

-----Original Message-----
From: Jennifer.D.Spriggs@usdoj.gov [mailto:Jennifer.D.Spriggs@usdoj.gov]
Sent: Monday, June 30, 2003 10:22 AM
To: Lowy, Peter A SHLOIL
Subject: RE: Pennzoil-Quaker State

There is no particular form but there is a particular format. If you send me a draft proposal (and it must be clearly marked draft) I will review it and let you know what terms need to be added and/or deleted.

-----Original Message-----
From: peter.a.lowy@shell.com [mailto:peter.a.lowy@shell.com]
Sent: Monday, June 30, 2003 10:56 AM
To: Spriggs, Jennifer D.
Subject: RE: Pennzoil-Quaker State

Jennifer: I want to submit the "settlement" proposal for the $2M refund. Is there a particular form I need to submit? Your guidance in this regard is appreciated.



A 12

U.S. Department of Justice

Tax Division

Facsimile No. (202) 514-9440
Trial Attorney: Jennifer Dover Spriggs
Attorney's Direct Line: (202) 307-0840

*Please reply to:* *Court of Federal Claims Section*
*P.O. Box 26*
*Ben Franklin Station*
*Washington, D.C. 20044*

EJO'C:MLS:DG:JDSpriggs JDS
154-1888
CMN 20002102575

**VIA FACSIMILE AND MAIL**

JUL 18 2003

Peter A. Lowy, Esquire
910 Louisiana St.
Ste 4396
Houston, Texas 77002

Re: Pennzoil-Quaker State Company and Subsidiaries, successor to Quaker State Corporation and subsidiaries v. United States, Fed. Cl. No. 2-279 T

Dear Mr. Lowy:

We have received your offer dated July 7, 2003, regarding plaintiff's 1996-1998 tax years. Your offer will be processed in accordance with our usual procedure, including obtaining the views of Chief Counsel, Internal Revenue Service. Final action will then be taken by the Attorney General, or an official designated by him for this purpose.

We are sure you understand that unless you receive a formal notice of acceptance from this office the Department is in no way committed to a settlement. You will be notified as soon as final action is taken on your offer.

This is also written to advise you that the July 7 settlement offer fails to contain certain terms and conditions which our trial attorney recommends be included. In an effort to avoid this situation, our trial attorney had requested that plaintiff's settlement offer be submitted to her initially in draft form. Since that did not occur, we recommend that the offer of July 7 be amended or withdrawn and revised as follows:

Plaintiff offers to compromise as follows:

1. Plaintiff shall be entitled to a refund or credit of overpayment equal to $254,401.00 with respect to the 1996 tax year, plus statutory interest;

2. Plaintiff shall be entitled to a refund or credit of overpayment equal to $1,907,545.00 with respect to the 1997 tax year, plus statutory interest;

3. If this offer is accepted, each party is to bear its own costs of litigation as to these issues, including attorneys fees and any other expenses in connection therewith;

4. If plaintiff has any unpaid liability in respect of an internal revenue tax, the overpayment resulting from this settlement may be credited thereon in accordance with the provisions of § 6402, Internal Revenue Code of 1986;

5. This settlement offer is made without prejudice to the rights of either party in *Pennzoil-Quaker State Company and Subsidiaries, successor to Quaker State Corporation and subsidiaries v. United States*, Fed. Cl. No. 2-279 T.

Please note that this letter is not an offer of settlement. To expedite processing of plaintiff's offer, we ask that you provide all documentation that you have in support of the amounts claimed including copies of Forms 1139 with attachments, and any revenue agent's reports for 1996-1998.

Sincerely yours,

EILEEN J. O'CONNOR
Assistant Attorney General
Tax Division

By: Mildred L. Seidman /DG
MILDRED L. SEIDMAN
Chief, Court of Federal Claims Section

U.S. Department of Justice

Tax Division

*Facsimile No. (202) 514-9440*
*Trial Attorney: Jennifer Dover Spriggs*
*Attorney's Direct Line: (202) 307-0840*

*Please reply to: Court of Federal Claims Section*
*P.O. Box 26*
*Ben Franklin Station*
*Washington, D.C. 20044*

EJO'C:MLS:DG:JDSpriggs JDS
154-1888
CMN 20002102575

**VIA FACSIMILE AND MAIL**

JUL 30 2003

Peter A. Lowy, Esquire
910 Louisiana St.
Ste 4396
Houston, Texas 77002

Re: Pennzoil-Quaker State Company and Subsidiaries, successor to Quaker State Corporation and subsidiaries v. United States, Fed. Cl. No. 2-279 T

Dear Mr. Lowy:

We have received your amended offer dated July 22, 2003, regarding plaintiff's 1996-1997 tax years. Your amended offer will be processed in accordance with our usual procedure, including obtaining the views of Chief Counsel, Internal Revenue Service. Final action will then be taken by the Attorney General, or an official designated by him for this purpose.

We are sure you understand that unless you receive a formal notice of acceptance from this office the Department is in no way committed to a settlement. You will be notified as soon as final action is taken on your offer.

This is also written to advise you that the July 22 settlement offer contains two typographical errors. The first line of ¶ 2 of the amended offer states, "Plaintiff shall be entitled to a refund or credit of overpayment equal t[sic]". We assume that "t" in ¶ 2 of the amended offer should be "to". The first line of ¶ 3 of plaintiff's amended offer states, "If this offer is accepted, each party is to beat [sic] its own costs of litigation". We assume that "beat" in ¶ 3 of the amended offer should be "bear". We ask that you confirm or correct our understanding of the offer of July 22.

Please note that this letter is not an offer of settlement. In order to process plaintiff's offer, we ask that you provide all documentation that you have in support of the amounts claimed including copies of Forms 1139 with attachments, and any revenue agent's reports for 1996-1998.

Sincerely yours,

EILEEN J. O'CONNOR
Assistant Attorney General
Tax Division

By: Mildred L. Seidman /DG
MILDRED L. SEIDMAN
Chief, Court of Federal Claims Section

**Lowy, Peter A SHLOIL-FXD**

**From:** Lowy, Peter A SHLOIL
**Sent:** Thursday, October 23, 2003 1:55 PM
**To:** 'Jennifer.D.Spriggs@usdoj.gov'
**Subject:** RE: Pennzoil Quaker State--Progress?

Great!

-----Original Message-----
From: Jennifer.D.Spriggs@usdoj.gov [mailto:Jennifer.D.Spriggs@usdoj.gov]
Sent: Thursday, October 23, 2003 1:42 PM
To: Lowy, Peter A SHLOIL
Subject: RE: Pennzoil Quaker State--Progress?

Peter,

I did get additional materials from the IRS. I have forwarded those records to our recomputation specialist. I will let you know if we need any more information.

Jennifer
---Original Message-----
From: peter.a.lowy@shell.com [mailto:peter.a.lowy@shell.com]
Sent: Thursday, October 23, 2003 2:36 PM
To: Spriggs, Jennifer D.
Subject: Pennzoil Quaker State--Progress?

Jennifer: What is the status of the settlement offer that PQS submitted on July 22, 2003? Last we corresponded, you indicated that the person responsible for computations has it and is waiting to receive the '98 FITRs from the IRS. Are things progressing? As we previously discussed, if you conclude that the government has lost the returns, let me know and I'll try to locate, copy and ship them to you. I have not heard from you in this regard, so I am hopeful that you've found what you need.



A17

**Lowy, Peter A SHLOIL-FXD**

**From:** Jennifer.D.Spriggs@usdoj.gov
**Sent:** Tuesday, December 09, 2003 8:43 AM
**To:** Lowy, Peter A SHLOIL
**Subject:** RE: Status of Pennzoil Quaker State Settlement Offers

Peter,

I am still waiting on the recomputation for the NOL issue and the IRS views on the September settlement proposal.

Jennifer

-----Original Message-----
From: peter.a.lowy@shell.com [mailto:peter.a.lowy@shell.com]
Sent: Monday, December 08, 2003 5:08 PM
To: Spriggs, Jennifer D.
Subject: RE: Status of Pennzoil Quaker State Settlement Offers

Jennifer,

I hope you're enjoying the holiday season. Just dropping a note to check on the status of the Pennzoil's settlement offers. Please let me know where things stand. Thanks.

-----Original Message-----
From: Jennifer.D.Spriggs@usdoj.gov [mailto:Jennifer.D.Spriggs@usdoj.gov]
Sent: Tuesday, November 18, 2003 9:01 AM
To: Lowy, Peter A SHLOIL
Subject: RE: Status of Pennzoil Quaker State Settlement Offers

Peter,

I am meeting with the IRS on 11/20. I'll contact you after the meeting.

Jennifer

-----Original Message-----
From: peter.a.lowy@shell.com [mailto:peter.a.lowy@shell.com]
Sent: Thursday, November 13, 2003 4:48 PM
To: Spriggs, Jennifer D.
Subject: Status of Pennzoil Quaker State Settlement Offers

Jennifer: What is the status of the 2 separate settlement offers that PQS submitted--one submitted July 22, 2003, which amended the July 7, 2003 offer (in connection with the computational issue for '96 and '97), and the other submitted September 29, 2003 (in connection with the 1341 case for '94-'97)? Have you made a recommendation one way or the other as to either of these?

**Lowy, Peter A SHLOIL-FXD**

**Subject:** FW: Enlargement

From: Jennifer.D.Spriggs@usdoj.gov [mailto:Jennifer.D.Spriggs@usdoj.gov]
Sent: Wednesday, February 25, 2004 2:44 PM
To: Lowy, Peter A SHLOIL
Subject: RE: Enlargement

I have received the draft recomputation.

-----Original Message-----
From: peter.a.lowy@shell.com [mailto:peter.a.lowy@shell.com]
Sent: Monday, February 23, 2004 10:27 AM
To: Spriggs, Jennifer D.
Subject: RE: Enlargement

I forgot to ask, is the recomp ready yet?

-----Original Message-----
From: Jennifer.D.Spriggs@usdoj.gov [mailto:Jennifer.D.Spriggs@usdoj.gov]
Sent: Monday, February 09, 2004 8:11 AM
To: Lowy, Peter A SHLOIL
Subject: RE: Enlargement

Peter,

Thank you. I have not received the recomputation yet for the NOL issue but I understand it is almost ready.

Jennifer

-----Original Message-----
From: peter.a.lowy@shell.com [mailto:peter.a.lowy@shell.com]
Sent: Friday, February 06, 2004 5:57 PM
To: Spriggs, Jennifer D.
Subject: RE: Enlargement

I do not oppose. Any word yet on the settlement offer re the computational issue?

-----Original Message-----
From: Jennifer.D.Spriggs@usdoj.gov [mailto:Jennifer.D.Spriggs@usdoj.gov]
Sent: Friday, February 06, 2004 3:17 PM
To: Lowy, Peter A SHLOIL
Subject: Enlargement

Peter,

I left a voice mail message about the enlargement in Pennzoil. I need to request a 7day enlargement to allow more time for review. Please advise if plaintiff will object.

Jennifer

**Lowy, Peter A SHLOIL-FXD**

**From:** Lowy, Peter A SHLOIL
**Sent:** Tuesday, April 20, 2004 3:11 PM
**To:** 'Jennifer.D.Spriggs@usdoj.gov'
**Subject:** RE: Brief/settlement

Jennifer: Please let me know when you're ready to discuss the recomps. I noticed that you have filed a reply in the 1341 case, so I feel under a certain amount of pressure to either resolve the recomp issue or include it in the 94-97 case.

-----Original Message-----
From: Jennifer.D.Spriggs@usdoj.gov [mailto:Jennifer.D.Spriggs@usdoj.gov]
Sent: Tuesday, April 13, 2004 12:39 PM
To: Lowy, Peter A SHLOIL
Subject: RE: Brief/settlement

Thanks.

Jennifer

-----Original Message-----
From: peter.a.lowy@shell.com [mailto:peter.a.lowy@shell.com]
Sent: Monday, April 12, 2004 4:31 PM
To: Spriggs, Jennifer D. (TAX)
Subject: RE: Brief/settlement

No objection. Speak to you next week re the recomps.

-----Original Message-----
From: Jennifer.D.Spriggs@usdoj.gov [mailto:Jennifer.D.Spriggs@usdoj.gov]
Sent: Monday, April 12, 2004 12:57 PM
To: Lowy, Peter A SHLOIL
Subject: Brief/settlement

Peter,

I have reviewed the recomps. for 1996 and 1997 and have a few questions for the recomputation specialist. I plan to meet with him and to get back to you by next week.

Also, does plaintiff have any objection to defendant seeking an enlargement of time of 7 days to respond to plaintiff's brief.

Jennifer



A20

**Lowy, Peter A SHLOIL-FXD**

**From:** Jennifer.D.Spriggs@usdoj.gov
**Sent:** Friday, September 03, 2004 10:07 AM
**To:** Lowy, Peter A SHLOIL
**Subject:** RE: Pennzoil Quaker State

Peter,

I have been advised that the proposal in this case re: the NOL carryback from 1998 to years 1996 and 1997 was submitted by the IRS to the Joint Committee about a month ago and is still there being reviewed.

Jennifer

-----Original Message-----
From: peter.a.lowy@shell.com [mailto:peter.a.lowy@shell.com]
Sent: Wednesday, August 25, 2004 2:16 PM
To: Spriggs, Jennifer D. (TAX)
Subject: RE: Pennzoil Quaker State

ok.

-----Original Message-----
From: Jennifer.D.Spriggs@usdoj.gov [mailto:Jennifer.D.Spriggs@usdoj.gov]
Sent: Wednesday, August 25, 2004 1:16 PM
To: Lowy, Peter A SHLOIL
Subject: RE: Pennzoil Quaker State

Peter,

I have left messages with the two IRS contacts that I have re: status of the Joint Committee Review in this case. I will let you know the status as soon as they get back to me.

Jennifer

-----Original Message-----
From: peter.a.lowy@shell.com [mailto:peter.a.lowy@shell.com]
Sent: Wednesday, August 18, 2004 12:28 PM
To: Spriggs, Jennifer D. (TAX)
Subject: RE: Pennzoil Quaker State

Jennifer,

I hope you're enjoying you summer. At your convenience, could you please give me an update on the joint tax refund for '96-'97. Thanks.

-----Original Message-----
From: Jennifer.D.Spriggs@usdoj.gov [mailto:Jennifer.D.Spriggs@usdoj.gov]
Sent: Monday, June 14, 2004 11:23 AM
To: Lowy, Peter A SHLOIL
Subject: RE: Pennzoil Quaker State

Peter,

I left a voice mail message with the IRS. I'll let you know the status as soon as I get a response. It is probably easiest if you contact me about the IRS proceedings.

Jennifer

-----Original Message-----
From: peter.a.lowy@shell.com [mailto:peter.a.lowy@shell.com]
Sent: Thursday, June 10, 2004 6:22 PM
To: Spriggs, Jennifer D. (TAX)
Subject: RE: Pennzoil Quaker State

Sorry to bug you about this...

-----Original Message-----
From: Lowy, Peter A SHLOIL
Sent: Wednesday, June 02, 2004 7:05 PM
To: 'Jennifer.D.Spriggs@usdoj.gov'
Subject: Pennzoil Quaker State

Jennifer,

Did you have a chance to find out whether there is a person within the IRS that will serve as my contact on the matter going to Joint Tax? And did you find out whether it is the IRS' position that I need to file formal refund claims for this matter?

Pete Lowy

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 2-279 T

(Chief Judge Edward J. Damich)

PENNZOIL-QUAKER STATE COMPANY AND SUBSIDIARIES, SUCCESSOR TO QUAKER STATE CORPORATION AND SUBSIDIARIES,

Plaintiff

v.

THE UNITED STATES,

Defendant

JOINT STATUS REPORT

Pursuant to the Court's opinion of October 28, 2004, the parties submit the following joint status report. As requested by the Court, this joint status report addresses the calculation of damages in this action and the efforts being made by plaintiff and the IRS to resolve a nonsuit year administratively (as well as related carryback issues therefrom that would affect the 1996-1997 tax years, which are suit years).

**Computation of judgment amount**

Pursuant to the Court's opinion, plaintiff is entitled to a refund of the overpayment in taxes and interest thereon based upon Section 1341 relief related to the antitrust settlement payments which it made in tax years 1995 and 1996 (minus all costs, expenses, and attorneys fees which were paid from the settlement fund). In view of the complexity of the Section 1341 computation, the parties request 60 days to submit an agreed computation to the Court (or, in the event agreement cannot be reached, to submit separate computations for the Court's consideration).

**Other administrative proceedings**[1]

Plaintiff also alleges an entitlement to additional refunds for its 1996-1997 tax years based upon issues raised in a nonsuit year (the 1998 tax year). The basis for plaintiff's claimed entitlement to the additional refunds for the 1996-1997 tax years does not involve Section 1341. The IRS audited plaintiff's 1998 tax year and has made its recommendations with respect to the 1996-1998 tax years. The IRS has submitted its recommendations to the staff of the Joint Committee on Taxation where the issues raised and refunds sought for plaintiff's tax years 1996-1998 are under review. When the parties submit their computations with respect to the judgment amount in this case, they will further advise the Court on the progress of the review of plaintiff's 1996-1998 tax years by the staff of the Joint Committee on Taxation.

[1] In its opinion (at p.19) the Court requested information about the "progress of other litigation relating to the 1995-96 taxable years". However, plaintiff does not have any pending litigation with respect to the 1995-96 taxable years; rather, there is an administrative proceeding before the IRS with respect to plaintiff's 1998 tax year that will affect tax years 1996-97 by way of carryback.

Respectfully submitted,

11-8-04
Date

PETER A. LOWY
910 Louisiana St.
Ste 4396
Houston, Texas 77002
(713) 241-4755, (713) 241-2162 (facsimile)

Attorney for Plaintiff

11-9-04
Date

JENNIFER DOVER SPRIGGS
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-0840, (202) 514-9440 (facsimile)

EILEEN J. O'CONNOR
Assistant Attorney General
MILDRED L. SEIDMAN
Chief, Court of Federal Claims Section
DAVID GUSTAFSON
Assistant Chief

11/9/2004
Date

Of Counsel

Attorneys for Defendant

CERTIFICATE OF SERVICE

I certify that service of the foregoing Joint Status Report has, this 9th day of November, been made on plaintiff's counsel by mailing a copy thereof, in a postage prepaid envelope, to the following address:

Peter A. Lowy, Esquire
910 Louisiana St.
Ste 4396.
Houston, Texas 77002

U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6440

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 2-279 T

(Chief Judge Edward J. Damich)

PENNZOIL-QUAKER STATE COMPANY AND SUBSIDIARIES, SUCCESSOR TO QUAKER STATE CORPORATION AND SUBSIDIARIES,

Plaintiff

v.

THE UNITED STATES,

Defendant

JOINT STATUS REPORT

JAN 10 2005

Pursuant to the Court's order of November 16, 2004, the parties submit the following joint status report. As requested by the Court, this joint status report addresses the calculation of damages in this action and the efforts being made by plaintiff and the IRS to resolve a nonsuit year administratively (as well as related carryback issues therefrom that would affect the 1996-1997 tax years, which are suit years).



A27

**Computation of judgment amount**

On December 8, 2004, plaintiff's counsel forwarded to defendant's trial attorney a proposal regarding the amount of costs, expenses and attorneys fees paid out of the antitrust settlement fund that relate to the antitrust settlement payments which it made in tax years 1995 and 1996. Counsel for the parties held a telephone conference on December 10, 2004, to discuss plaintiff's proposal. On December 13, 2004, defendant's counsel received documentation from plaintiff in support of its proposal. Subsequently, counsel for the parties have had numerous discussions about plaintiff's proposal regarding the antitrust settlement costs. Counsel for the parties are in agreement as to the antitrust settlement costs that have been identified to date and the methodology that will be used to allocate the antitrust expenses to the years in suit.

Defendant's trial attorney has requested supplemental documentation relating to expenses paid from the Lazy Oil settlement fund from the Clerk's Office, U.S. District Court for the Western District of Pennsylvania. The Clerk's Office advised defendant's trial attorney that the requested records are being retrieved from storage and may arrive within the next two weeks. The parties will need additional time once the supplemental records arrive to determine if there are additional costs that must be identified.

Based upon the foregoing, the parties request 60 days to submit an agreed computation to the Court (or, in the event agreement cannot be reached, to submit separate computations for the Court's consideration).

**Other administrative proceedings**

As set forth in the joint status report filed on November 9, 2004, the IRS has submitted its recommendations to the staff of the Joint Committee on Taxation where the issues raised and refunds sought for plaintiff's tax years 1996-1998 are under review. When the parties submit their computations with respect to the judgment amount in this case, they will further advise the Court on the progress of the review of plaintiff's 1996-1998 tax years by the staff of the Joint Committee on Taxation.

Respectfully submitted,

1-7-05
Date

PETER A. LOWY
910 Louisiana St.
Ste 4396
Houston, Texas 77002
(713) 241-4755, (713) 241-2162 (facsimile)

Attorney for Plaintiff

1/10/05
Date

JENNIFER DOVER SPRIGGS
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-0840, (202) 514-9440 (facsimile)

EILEEN J. O'CONNOR
Assistant Attorney General
MILDRED L. SEIDMAN
Chief, Court of Federal Claims Section
DAVID GUSTAFSON
Assistant Chief

1/10/2005
Date

Of Counsel

Attorneys for Defendant

CERTIFICATE OF SERVICE

I certify that service of the foregoing Joint Status Report has, this 10th day of January, 2005, been made on plaintiff's counsel by mailing a copy thereof, in a postage prepaid envelope, to the following address:

Peter A. Lowy, Esquire
910 Louisiana St.
Ste 4396.
Houston, Texas 77002

Diana L. Henderson

U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6440