Substitute

# United States Court of Appeals for the Federal Circuit

FILED
JAN 8 2008
U.S. COURT OF FEDERAL CLAIMS

2006-5142

PENNZOIL-QUAKER STATE COMPANY and subsidiaries,
(successor to Quaker State Corporation and subsidiaries),

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

## Judgment

ON APPEAL from the United States Court of Federal Claims

in CASE NO(S). 02-CV-279.

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

REVERSED

ENTERED BY ORDER OF THE COURT

DATED JAN - 8 2008

Jan Horbaly, Clerk

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: Date: 7/10/08

Issued as Mandate: FEB 29 2008
COSTS:
Printing ........ $ 390.96
Total ........ $ 390.96

# United States Court of Appeals for the Federal Circuit

February 15, 2008

ERRATA

**Appeal No. 2006-5142**

PENNZOIL-QUAKER STATE COMPANY V. UNITED STATES

Decided: January 8, 2008 Precedential Opinion

On Page 1, line 38, insert a footnote after "July 27, 2006," that states:

> On appeal, the government does not dispute the trial court's entry of judgment in favor of Quaker in the amounts of $254,401 for tax year 1996 and $1,907,545 for tax year 1997. Accordingly, that portion of the trial court's judgment is affirmed.

On Page 2, line 5, replace "We reverse" with "We reverse in part."

On Page 15, line 21, replace "**REVERSED**" with "**REVERSED IN PART**."

On Page 15, line 23, insert "Costs to appellant."

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: [signature] Date: 7/10/08

# United States Court of Appeals for the Federal Circuit

February 15, 2008

ERRATA

**Appeal No. 2006-5142**

PENNZOIL-QUAKER STATE COMPANY V. UNITED STATES

Decided: January 8, 2008 Precedential Opinion

On Page 1, line 38, insert a footnote after "July 27, 2006," that states:

> On appeal, the government does not dispute the trial court's entry of judgment in favor of Quaker in the amounts of $254,401 for tax year 1996 and $1,907,545 for tax year 1997. Accordingly, that portion of the trial court's judgment is affirmed.

On Page 2, line 5, replace "We reverse" with "We reverse in part."

On Page 15, line 21, replace "**REVERSED**" with "**REVERSED IN PART**."

On Page 15, line 23, insert "Costs to appellant."

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOTICE OF ENTRY OF JUDGMENT ACCOMPANIED BY OPINION

OPINION FILED AND JUDGMENT ENTERED: 01/08/08

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and petitions for rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

Costs are taxed against the Appellee(s) under Rule 39. The party entitled to costs is provided a bill of costs form and an instruction sheet with this notice.

The parties are encouraged to stipulate to the costs. A bill of costs will be presumed correct in the absence of a timely filed objection.

Costs are payable to the party awarded costs. If costs are awarded to the government, they should be paid to the Treasurer of the United States. Where costs are awarded against the government, payment should be made to the person(s) designated under the governing statutes, the court's orders, and the parties' written settlement agreements. In cases between private parties, payment should be made to counsel for the party awarded costs or, if the party is not represented by counsel, to the party pro se. Payment of costs should not be sent to the court. Costs should be paid promptly.

If the court also imposed monetary sanctions, they are payable to the opposing party unless the court's opinion provides otherwise. Sanctions should be paid in the same way as costs.

Regarding exhibits and visual aids: Your attention is directed to FRAP 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.

JAN HORBALY
Clerk

cc: Deborah K. Snyder
Peter A. Lowry; William L. Goldman

PENNZOIL-QUAKER STATE V US, 2006-5142
CFC - 02-CV-279

# United States Court of Appeals for the Federal Circuit

2006-5142

PENNZOIL-QUAKER STATE COMPANY and subsidiaries,
(successor to Quaker State Corporation and subsidiaries),

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Peter A. Lowy, of Houston, Texas, argued for plaintiff-appellee. Of counsel on the brief was J. Bradford Anwyll, Alston & Bird LLP, of Washington, DC.

Deborah K. Snyder, Attorney, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With her on the brief were Eileen J. O'Connor, Assistant Attorney General, and Richard Farber, Attorney.

William L Goldman, McDermott Will & Emery LLP, of Washington, DC, for amicus curiae.

Appealed from: United States Court of Federal Claims

Chief Judge Edward J. Damich

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2006-5142

PENNZOIL-QUAKER STATE COMPANY and subsidiaries,
(successor to Quaker State Corporation and subsidiaries),

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Appeal from the United States Court of Federal Claims in 02-CV-279, Chief Judge Edward J. Damich.

---

DECIDED: January 8, 2008

---

Before MAYER, Circuit Judge, JACOBS, Chief Judge* and PROST, Circuit Judge.

Opinion by the Court filed by Chief Judge Jacobs. Opinion concurring-in-part filed by Circuit Judge Prost.

JACOBS, Chief Judge.

The government appeals from a judgment entered in the Court of Federal Claims on July 27, 2006, granting partial summary judgment to Pennzoil-Quaker State Company ("Quaker") in its suit seeking a refund under Section 1341 of the Internal Revenue Code, 26 U.S.C. § 1341. That section gives relief to a taxpayer when an item

---

* Honorable Dennis Jacobs, Chief Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

year." Culley v. United States, 222 F.3d 1331, 1332 (Fed. Cir. 2000). The title of the section is: "Computation of tax where taxpayer restores substantial amount held under claim of right." The provision operates in the following contingency:

> If
>
> (1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;
>
> (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and
>
> (3) the amount of such deduction exceeds $3,000 . . . .

26 U.S.C. § 1341(a). In that event, the taxpayer "is entitled to either the equivalent of a refund for income tax paid in the earlier year, or a deduction from income in the year of repayment, whichever is more beneficial to the taxpayer." Chernin v. United States, 149 F.3d 805, 815 (8th Cir. 1998).

To qualify for § 1341 relief, the taxpayer must satisfy various non-textual requirements, two of which are relevant here. First, "the taxpayer's obligation to repay must arise out of the specific 'circumstances, terms and conditions' of the transaction whereby the amount was originally included in . . . income." Bailey v. Comm'r, 756 F.2d 44, 47 (6th Cir. 1985) (quoting Pahl v. Comm'r, 67 T.C. 286, 289-91 (1976)). This has been called the "same circumstances" test. Second, the deduction must be "allowable" under a provision of the Code other than § 1341. See Skelly Oil Co., 394 U.S. at 683.

income, i.e., understated COGS. The Court of Federal Claims granted Quaker's motion for partial summary judgment on that claim (the only claim then left in the case[1]). Pennzoil-Quaker State Co. v. United States, 62 Fed. Cl. 689 (2004). The government appealed.

The Federal Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(3).

## STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. Adams v. United States, 471 F.3d 1321, 1324 (Fed. Cir. 2006).

## DISCUSSION

The government argues chiefly that § 1341 relief is unavailable (1) because Quaker fails to link its settlement payments to its understatement of COGS and (2) because (even if Quaker otherwise satisfies the elements of § 1341(a)) the inventory exception bars relief.

We agree that Quaker's claim fails because the settlement payments did not arise from the same circumstances as Quaker's past understatement of COGS. Moreover, even if Quaker's claim did not suffer that fatal flaw, relief under § 1341 would be barred by the inventory exception.

### I.

"The 'claim of right' interpretation of the tax laws has long been used to give finality to [the annual accounting] period, and is . . . deeply rooted in the federal tax

[1] Quaker also brought a claim for tax relief in connection with benefit payments it made to coal miners who were disabled by black lung disease. At the summary judgment stage, Quaker no longer contested the government's opposition to its black lung claim; accordingly, the Court of Federal Claims entered summary judgment for the government on that claim, a ruling Quaker does not challenge.

> receipt of commissions and his liability for payment of the penalty were separate and distinct transactions; unquestionably, he would have incurred the liability, even if he had received no commissions. Moreover, the amount he received from the estate as commissions bore no relationship to the amount he became obligated to pay the United States

Id. at 823. Similarly, in Kraft v. United States, 991 F.2d 292 (6th Cir. 1993), the court barred application of § 1341 where the item included in income (medical fees from Blue Cross) "did not arise out of the same circumstances, terms and conditions" as taxpayer's restitution payment for fraud (to Blue Cross). Id. at 295. See Reynolds Metals Co. v. United States, 389 F. Supp. 2d 692, 702 (E.D. Va. 2005) (denying relief where corporation's revenues in prior taxable years "bore no relationship to the amount it became obligated to pay for environmental clean-up" in later year, which was "the result of the enactment of retroactive environmental laws"); Griffiths v. United States, 54 Fed. Cl. 198, 202 (2002) (concluding that taxpayer's settlement of claims for negligence and breach of fiduciary duty arising out of her business had "no connection" to consulting fees she received after selling the business).

In short, where the later payment arises from a different commercial relationship or legal obligation, and thus is not a counterpart or complement of the item of income originally received, the "same circumstances" test precludes application of § 1341. Cf. Dominion Res., Inc, 219 F.3d at 368 (finding same circumstances test satisfied where public utility's "authorization from regulatory authorities to collect [the charges] and its obligation to repay [portions of the charges] arose from . . . liability to the federal government for deferred income taxes," even though the utility did not repay the same customers who paid the original charges).

United States v. Fawaz, 881 F.2d 259, 264 (6th Cir. 1989); see In re Lilly, 76 F.3d 568, 572 (4th Cir. 1996) ("such costs cannot logically be treated as deductions from gross income"); Metra Chem. Corp. v. Comm'r, 88 T.C. 654, 661 (1987) (COGS is not treated as deduction from gross income, but rather is "subtracted from gross receipts to arrive at gross income").

(2) It follows that Quaker's claim contains a big--and fatal--conceptual defect: for purposes of the "item included" requirement under subsection (a)(1), Quaker treats the $2.9 million as COGS; but for purposes of "deduction allowable" requirement under subsection (a)(2), Quaker treats it as a settlement payment. There is thus a disconnect between the purported item included in gross income (understatement of COGS) and the item restored (a negotiated lump sum payment to settle a lawsuit). This problem is intractable: COGS cannot be deducted, and settlement payments are not included in gross income.

(3) There was no restoration at work here. Quaker received funds from its petroleum product customers; Quaker subsequently passed some of those funds to its crude oil suppliers under the settlement agreement. We need not decide whether restoration requires the repayment of a sum calculated according to the same principles, in respect of the same transaction, paid to the same person; here, the sum was calculated to meet the needs of a different transaction with payment to another party altogether.

The government makes this argument forcefully, and Quaker largely concedes that it has not "restored" a sum to the same party on account of the same transaction or series of transactions. Instead, Quaker argues that because the term "restoration"

because of the restoration to another of an item which was included in the taxpayer's gross income for a prior taxable year (or years) under a claim of right." 26 C.F.R. § 1.1341-1(a) (emphasis added). The regulation goes on to define "restoration to another" as "a restoration resulting because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item (or portion thereof)." Id.

Accordingly, we hold that Quaker cannot invoke § 1341 for its settlement payments.

II.

Section 1341 does not apply here for an alternative reason: the inventory exception. The inventory exception precludes § 1341 relief for:

> any deduction allowable with respect to an item which was included in gross income by reason of the sale or other disposition of stock in trade of the taxpayer (or other property of a kind which would properly have been included in the inventory of the taxpayer if on hand at the close of the prior taxable year) or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

26 U.S.C. § 1341(b)(2). Significantly (for a reason set forth infra), the inventory exception is inapplicable

> if the deduction arises out of refunds or repayments with respect to rates made by a regulated public utility . . . if such refunds or repayments are required to be made by the Government, political subdivision, agency, or instrumentality referred to in such section, or by an order of a court, or are made in settlement of litigation or under threat or imminence of litigation.

Id.

illustrates that the inventory exception was designed to assure that taxpayers could not obtain relief under both sections 1341 and 462. Accordingly, argues Quaker, the inventory exception applies only when the taxpayer's proposed deduction is based on sales returns or allowances.

Quaker also relies on the Treasury Regulation, which states in relevant part:

> [T]he provisions of section 1341 . . . do not apply to deductions attributable to items which were included in gross income by reason of the sale or other disposition of stock in trade of the taxpayer . . . or property held by the taxpayer primarily for sale to customers in the ordinary course of the taxpayer's trade or business. This section is, therefore, not applicable to sales returns and allowances and similar items.

26 C.F.R. § 1.1341-1(f) (emphasis added). Quaker reads the underlined phrase to say that the inventory exception applies exclusively to "sales returns and allowances and similar items." Quaker Br. at 55.

"Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997) (internal quotation marks and citation omitted).

The wording of the inventory exception is clear as a grammatical matter. A modifying phrase attaches to its closest referent; so phrase [C] ("because of the sale . . . of . . . inventory") would ordinarily modify phrase [B] ("which was included in gross income"). Accordingly, if the "item was included in gross income for a prior taxable year" because of the sale of inventory, then the inventory exception precludes section

cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." (internal citation and quotation marks omitted)).

Finally, the plain language of § 1341 makes no reference to § 462. We are therefore unconvinced that the legislative history of § 462 can bear the weight Quaker gives it.

For these reasons, we conclude that the inventory exception applies where the item was included in gross income because of the sale of inventory.

COGS, or cost of sales, is "the price of buying or making an item that is sold." Dictionary of Accounting Terms 110. Over a given period, it is calculated as the dollar value of beginning inventory, plus purchases, less the dollar value of ending inventory. Id. at 111. In short, COGS is a measure of inventory sales.

Quaker claims that by underpaying for crude oil, it overstated its gross income. That is another way of saying that it underpaid for inventory and thereby overstated its inventory sales. The sale of inventory is inextricably linked to the purchase of inventory to sell. Therefore, even if Quaker could make the link between its understatement of COGS and its subsequent settlement payments, the inventory exception would bar relief.

**CONCLUSION**

For the foregoing reasons, the judgment of the Court of Federal Claims is

**REVERSED**.

# United States Court of Appeals for the Federal Circuit

2006-5142

PENNZOIL-QUAKER STATE COMPANY and subsidiaries,
(successor to Quaker State Corporation and subsidiaries),

Plaintiff-Appellant,

v.

UNITED STATES

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 02-CV-279, Chief Judge Edward J. Damich.

PROST, Circuit Judge, concurring-in-part.

I join the majority opinion with respect to part II, and therefore concur in the result. I believe the inventory exception applies to exclude from 26 U.S.C. § 1341(a) the transactions in this case, as clearly explained by the majority opinion. I would, however, reverse solely on that ground because I have some doubts about the government's position with respect to the initial applicability of § 1341 in this case.

As an initial matter, I believe that the "item" included in gross income refers here to Quaker's "gross income derived from business," as set forth in 26 U.S.C. § 61. Just as the cost of goods sold ("COGS") is a component in the calculation of income, not a separate deduction, the "item" at issue in this case refers to Pennzoil-Quaker State Company's ("Quaker's") business income as a whole; COGS comprises one component of that income. When the settlement payment resulted from underpayment of COGS—a transaction affecting the item included in income—the requirements of § 1341(a) were met.

settlement payment because it owed more money than it paid for those goods; as a result, it did not have an unrestricted right to the full income it had stated in earlier years. As I read the statute, this course of events satisfies § 1341(a).

Finally, I see no requirement for a "restoration" in the statute such that the taxpayer claiming treatment under § 1341 must return money to a party that had previously given the taxpayer money. Unlike the majority, I do not read Culley v. United States to establish any restoration requirement. 222 F.3d 1331 (Fed. Cir. 2000). Rather, the taxpayer in that case undoubtedly made a restoration—by returning money to the parties that had paid the taxpayer initially. Id. at 1335. The only two issues, therefore, were whether the restoration related to the items included in gross income, and whether it appeared that the taxpayer had an unrestricted right to the item in the prior year. Id. The court explicitly limited its analysis to the latter question of the appearance of an "unrestricted right." Id. Thus, I do not read this case as establishing a restoration requirement under § 1341. Nothing in the statute limits its applicability to repayment of prior receipts.

Having rejected the grounds upon which the government relies for its position in this case, I would hold that Quaker can invoke § 1341 for its settlement payments. As the majority explains, however, the inventory exception of § 1341(b) precludes favorable tax treatment for Quaker in this instance. Therefore, I join the majority in reversing.

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: [signature] Date: 1/10/08